UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DENNIS J. SUITER, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>JOHN R. VANNATTA, *et al.*, )<br>)<br>Defendants ) | CAUSE NO. 3:06-CV-197 RM |

OPINION AND ORDER

Dennis Suiter, a prisoner confined at the Miami Correctional Facility ("MCF"), submitted a complaint under 42 U.S.C. § 1983, alleging that MCF officials violated his federally protected rights by not protecting him from being assaulted by another inmate, by denying him adequate medical treatment for his injuries, and by allowing other inmates to steal his property. The court screened the complaint pursuant to 28 U.S.C. § 1915A, allowed Mr. Suiter to proceed against defendants John VanNatta, Kenneth Owens, J. Prather, Janet Tuley, T. Grinslade, Chad Barr, Nichol Pax, Nurse Dotty, Lynn Frye, Thelma Miles, and Sandy Calfee[1] for damages in their personal capacities, and for declaratory relief in their official capacities, on his Eighth Amendment claims that they failed to protect him from being attacked by another inmate and were deliberately indifferent to his serious medical needs, dismissed defendant Randall, and dismissed all other claims.

Defendant Doty Cook filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the court granted on September 12, 2006. Defendants Frye, Calfee, VanNatta,

---

[1] The complaint named this defendant as Sandy Covert, but in her summary judgment motion this defendant advises the court that her correct name is Sandy Calfee.

Owens, Prather, Tuley, and Grinslade moved for summary judgment, asserting that Mr. Suiter had not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). The court granted that motion in part and denied it in part on January 30, 2007. The court granted summary judgment to defendants Tuley, and Grinslade on the plaintiff's claim that they denied him access to medical personnel, granted summary judgment to defendants Owens and Prater on the plaintiff's claim that they failed to act to protect him from being attacked, and dismissed defendant VanNatta for lack of personal involvement. The court denied summary judgment to defendants Chad Barr, Nichol Pax, Lynn Frye, and Sandy Calfee on the question of denial of medical care.

The remaining defendants, except for Nurse Thelma Miles, have moved for summary judgment pursuant to FED R. CIV. P. 56 in three separate motions; Mr. Suiter has responded. For the reasons that follow, the court grants defendant Barr and defendant Pax's motions for summary judgment and denies defendants Frye and Calfee's motion for summary judgment.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
>     . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving

party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

Defendant Pax has moved to strike the plaintiff's response to the defendants' motions for summary judgment as untimely. The court afforded Mr. Suiter until December 17, 2007, within which to respond to the defendants' motions for summary judgment. Mr. Suiter's response is file marked December 21, 2007. The certificate of service on his response is dated December 17, which, if correct, would make it timely under the "mailbox" rule established in Houston v. Lack, 487 U.S. 266 (1988). This rule provides that a prisoner's submissions to the court are to be deemed as "filed" on the date he delivers it to prison authorities for forwarding to the district court. Defendant Pax, however, notes that Mr. Suiter's affidavit, which is attached to the response, was not signed until December 19, which would mean that the response could not have been submitted to prison officials on December 17.

Mr. Suiter filed a response to Defendant Pax's motion to strike, stating that he could not get his materials in the mail by December 17 because he could not get to the institutional law library. He has attached a memorandum from W. Goodhart, the librarian at the Correctional Industrial Facility, who states that the library was closed several days in November and that, even in December, these closings delayed the operation of the law library. Mr. Goodhart states "we were unable to schedule Offender Suiter for the law library until December 19, 2007, due to circumstances beyond his control." (Docket # 108,

3

exhibit AA). Based on Mr. Goodhart's statement that Mr. Suiter was unable to complete his submissions until December 19, the court will deny the motion to strike and will consider his submissions.

In his complaint, Mr. Suiter states that after his cellmate attacked and injured him on March 24, 2004, prison officials sent him to the Wishard Memorial Hospital in Indianapolis. The doctors at Wishard took an x-ray and M.R.I., which established that his jaw was broken, and then returned him to the MCF. The doctors at Wishard wanted him to return within seven days to treat his broken jaw. Because Mr. Suiter could not chew solid food, he was placed on a liquid diet for seventy-two hours. Prison officials also gave him pain medication for nine days.

Mr. Suiter states that when the orders for a liquid diet and pain medication expired, they were not renewed and he remained in pain and was unable to chew solid food. Mr. Suiter asserts that he complained numerous times and eventually was scheduled to see medical staff, who told him "that the liquid diet and pain medication would not be renewed [and] that he would have to get by the best he could." (Complaint at p. 7). Moreover, according to the complaint, the defendants delayed returning him to Wishard for treatment for his broken jaw for fifteen days, resulting in the jaw healing improperly. When prison officials finally returned Mr. Suiter to the hospital, the doctors had to re-break his jaw and reset it.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively,

whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Under the Eighth Amendment, [a plaintiff] is not entitled to specific care . . . [or] . . . entitled to the best possible care." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Negligence or medical malpractice do not constitute deliberate indifference, Estelle v. Gamble, 429 U.S. at 106, and a mere disagreement with a physician over a course of medical treatment states no claim under § 1983 Brownlow v. Chavez, 871 F.Supp. 1061, 1064 (S.D.Ind. 1994). Even medical malpractice and incompetence state no claim of deliberate indifference. Walker v. Peters, 233 F.3d 494 (7th Cir. 2000).

The parties' submissions establish that MCF officials sent Mr. Suiter to the Wishard Memorial Hospital on March 25, 2004, for an injury inflicted on him by another inmate. Wishard medical personnel evaluated Mr. Suiter and determined that his jaw was broken and that he would need to undergo further treatment at Wishard. The defendants don't dispute that Mr. Suiter had a broken jaw, which constitutes a serious medical need. But

5

they all contend that they were not involved in his treatment or that they were not deliberately indifferent to his medical needs.

The claims against defendants Barr and Pax are contained in ¶¶ 31-33 of the complaint. Mr. Suiter alleges that "Chad Barr is the Director of the Medical Department at Miami Correctional Facility, and responsible for the overall operations of the medical department." (Complaint at ¶ 31). He alleges that the emergency room doctor had stated that his jaw would need attention within seven days but that "Nichol Pax and Chad Barr postponed Plaintiff's hospital visit until the fifteenth (15) day after the jaw was broken, (Complaint at ¶ 32), and that "as a result of Nichol Pax and Chad Barr's deliberate indifference to plaintiff's medical needs, the jaw had to rebreak Plaintiff's jaw . . .." (Complaint a ¶ 33).

In his declaration, defendant Barr states that he was employed at the MCF as health care administrator, and that he wasn't generally responsible for scheduling off-site medical referrals or obtaining authorization for treatment. He states he was not personally involved in scheduling Mr. Suiters's follow-up appointment at Wishard and played no role in establishing the date for the follow-up appointment at Wishard. He states that he "never personally delayed, prevented or postponed Offender Suiter receiving medical treatment for his fractured jaw." (Docket #92-1, ¶ 8).

Mr. Suiter responds that "it would be Chad Barr's place as the healthcare administrator to see that offenders are getting the health care they need." (Docket # 105 at p. 2). He provides a prescribed diet form dated March 26, 2004, (Docket # 105 exhibit A) which Mr. Barr signed, which he suggests "shows he does have to sign off on treatments.

6

Which involves him personally." (Docket #105 p. 1). Finally, Mr. Suiter states that he wrote to Mr. Barr about his problems but never received a response.

Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless the person was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

That Mr. Barr signed the March 26 diet form doesn't involve him personally in all phases of Mr. Suiter's treatment. If a doctor recommended a liquid diet for Mr. Suiter, and Mr. Barr refused to sign it even though he knew it to be medically necessary, that might state a claim of deliberate indifference against him. But Mr. Barr signed the diet form, and no doctor submitted a renewal of the diet form for Mr. Barr to review. Mr. Suiter says he wrote to Mr. Barr about his problems but there is nothing in the record to suggest that Mr. Barr received or read Mr. Suiter's missives.

Mr. Suiter asserts that "it would be Chad Barr's place as the healthcare administrator to see that offenders are getting the health care they need," (Docket # 105 at p. 2), and that "Chad Barr, during the end of March to April 8, 2004, failed to conduct himself and his department in a professional manner, assur[ing] that his staff was adequately performing

7

their job and sending me back to Wishard in a timely fashion . . ." (Docket #105 p. 3). But this is a *respondeat superior* argument, and that doctrine has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d at 1129. The record does not reflect that defendant Barr had any personal involvement in the denial or delay of treatment for Mr. Suiter, and he is entitled to summary judgment.

In her declaration, defendant Pax states that she was an administrative assistant responsible for clerical and administrative tasks. She states that one of her duties "was to obtain dates of treatment at outside facilities for offenders needing treatment within the parameters set by the treating physician. Once I receive the paper work from the physician, I would forward it to the PHS Corporate Office for approval. After approval was received, I contacted the medical facility in question to obtain an available date for treatment as scheduled by that particular facility." (Docket #91-1 ¶6).

Defendant Pax states that the physician at Wishard determined that Mr. Suiter would need further treatment at Wishard, that she received the necessary paperwork and approved it on April 6, 2004, and that she contacted Wishard to obtain a date for treatment. She was told by Wishard that the first available date for the follow-up visit was April 8, and she made an appointment for him to be taken to Wishard on that date. She also set other appointments for Mr. Suiter to be seen at Wishard after his April 8 visit. Defendant Pax attaches portions of Mr. Suiter's medical records confirming the statements she makes in her declaration. At the conclusion of her declaration she states that "I had no control over the date on which I received authorization for treatment from the physician, nor did I have control over the date on which approval was received from PHS. I also had no

8

control over the date of treatment given by" Wishard. (Docket #91-1, ¶9). She also states that she "never postponed, altered, delayed, or prevented Offender Suiter from receiving medical treatment for his fractured jaw." (*Id,* ¶ 10).

In his response, Mr. Suiter points to exhibit G, attached to his response, and asserts that it shows that Wishard "had set aside a time for Mr. Suiter's emergency treatment for his jaw . . . and Ms. Pax by not doing her job properly this date was missed as record shows." (Docket #105 p. 4). Exhibit G is a clinical summary covering March through June 2004. It is unclear from this document that Wishard had set a firm date for Mr. Suiter's return when he was seen on March 25, especially when read in conjunction with other exhibits. Plaintiff's exhibit E, a consult requisition from Wishard dated March 25,2004, states: "Instructions: Physician to schedule an appointment emergently for follow-up of Jaw Fx. 1." Plaintiff's exhibit F is a wishard document dated March 25, 2004, which states "ENT CONSULT Physician to schedule an appointment emergently for follow up of Jaw Fx. 1 visit authorized." These exhibits suggest that Mr. Suiter's follow-up visit to Wishard was to be scheduled at a later date. In any event, even assuming that exhibit G indicated that Wishard had suggested a firm date for a second visit, this exhibit could not have placed Ms. Pax on notice of that fact because it wasn't generated until June 2004 at the earliest.

Mr. Suiter asserts that had he returned to Wishard sooner than he did, his treatment would have been less painful and more effective. The defendants do not contest this claim, and the court accepts it as true. Because the evidence suggests that Mr. Suiter needed to return to Wishard before he did, he may meet the objective requirement of the test

9

established by <u>Farmer v. Brennan</u>. But to succeed on an Eighth Amendment claim, he must also satisfy the subjective component of the test. <u>Lunsford v. Bennett</u>, 17 F.3d 1574, 1579 (7th Cir. 1994). But none of the evidence before the court supports an inference that defendant Pax was responsible for the delay in Mr. Suiter's treatment. Rather, her evidence supports her contention that she scheduled him for a return appointment as soon as she could.

The claims against Nurses Frye, Calfee, and Miles are found in ¶¶ 36, 37, and 38 of the complaint. Mr. Suiter alleges that between March 24 and the first part of April 2004, these defendants were deliberately indifferent to his medical needs by refusing to provide needed medical care. In support of their motion for summary judgment, Nurses Frye and Calfee submit Nurse Frye's declaration and portions of Mr. Suiter's medical records.

According to these submissions, Mr. Suiter was housed in E Housing Unit in March and early April 2004. He was moved to the infirmary unit on April 8. According to Nurse Frye's declaration, while he was on E Housing unit the nurses would not have been responsible for insuring that he received his medication or a liquid diet, and that if he had problems receiving his medication or liquid diet on the unit he should have raised the issue during sick call. According to the Nurse Frye's declaration and the medical progress notes they submit, defendants Frye and Calfee didn't see Mr. Suiter during sick call between March 24 and April 8, 2004. Mr. Suiter responds with a statement under penalty of perjury, in which he states that:

> I went in person to Frye (Supervisor) and to Calfee for help. They claim[ed] they were not doctors and could not do anything for me. That is a lie for the fact that I was still in the emergency state needing treatment as Exhibit M

10

>   shows. They could of contacted the doctor and got results right away as Exhibits N, O, P, Q, R, and S show that other nurses did. Why did Frye and Calfee not respond with this order and get me treatment I would still like to know.

Docket #105-2 at p. 5

Mr. Suiter states that when the orders for a liquid diet and pain medication expired he was still in pain and could not chew solid food. This constitutes a serious medical need satisfying the objective prong of the test established by <u>Farmer v. Brennan</u>. Mr. Suiter states under oath that he saw Nurses Frye and Calfee in person and asked for help in getting his prescriptions for pain medication and a liquid diet renewed, but that instead of helping him they stated they were not doctors and could do nothing for him.

Accepting Mr. Suiter's statement as true, as the court must in dealing with a summary judgment motion, a rational finder of fact could conclude that if a prisoner who already had been diagnosed with a broken jaw approached a nurse, asking her to help in renewing his prescriptions for pain medication and a liquid diet, and the nurse simply said "no" instead of referring him to a doctor who could renew the prescriptions, then the nurse has been deliberately indifferent to the prisoner's serious medical needs under the subjective prong of the Eighth Amendment test.

For the foregoing reasons, the court DENIES defendant Pax's motion to strike (docket #106), GRANTS defendant Barr's motion for summary judgment (docket #92), GRANTS defendant Pax's motion for summary judgment (docket #97), and DENIES defendants Frye and Calfee's motion for summary judgment (docket # 83).

SO ORDERED.

ENTERED: March  25 , 2008

        /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court